**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C- 05-503 |
| | § | C.A. No. C-08-310 |
| DAVID BOCHICCHIO, | § | |
|     Defendant/Movant. | § | |

**ORDER DENYING MOTION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE AND
<u>ORDER DENYING CERTIFICATE OF APPEALABILITY</u>**

Pending before the Court is Defendant David Bochicchio's ("Bochicchio") motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255 (D.E. 136, 137),[1] which was filed by and through counsel on September 24, 2008. The Court ordered the government to respond, and the government's combined response and motion to dismiss was filed on November 20, 2008. (D.E. 140, 141.) Bochicchio filed a reply on December 22, 2008 (D.E. 142), which the Court has also considered.

For the reasons set forth herein, the Court GRANTS the government's motion to dismiss, and DENIES Bochicchio's § 2255 motion. The Court also DENIES Bochicchio a Certificate of Appealability.

**I. JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

**II. FACTS AND PROCEEDINGS**

On August 24, 2005, Bochicchio and a co-defendant, Conrad Fernandez, were charged in a single count indictment with bank robbery by force or violence, in violation of 18 U.S.C. §§ 2 and

---

[1] Docket entry references are to the criminal case.

1

2113(a). (D.E. 28.)  Bochicchio was represented by appointed counsel, Patrick J. McGuire.  He pleaded not guilty and a jury trial was held on March 6 and 7, 2006.  (See minutes dated March 6, 2006 and March 7, 2006.)  The basic evidence set forth at trial follows.

On July 21, 2005, a male subject, later identified as Bochicchio, entered Hibernia Bank, located at 4060 Weber, Corpus Christi, Texas.  The subject was carrying a backpack, wearing latex gloves, a black-hooded "Nike" sweatshirt, and black pants, and also had a pair of white pantyhose covering his face.  He approached the teller counter and waved a black handgun at the bank supervisor, Alma DeLeon.  He instructed De Leon to fill his backpack with $50 and $100 bills, and repeatedly stated "no dye packs."  DeLeon complied with Bochicchio's demands and filled the bag with $5,051, which included three $50 bait bills, for which DeLeon had the serial numbers.  Bochicchio fled the bank on foot and was observed entering a green Ford Mustang, with Texas license plates YGR89M.  The vehicle was registered to Conrad Fernandez.  (Presentence Investigation Report at ¶ 4.)

Officers with the Corpus Christi Police Department responded to the Hibernia Bank and made contact with witness Rudy Rodriguez.  Mr. Rodriguez told offers that he had been traveling north on Weber Road when he observed Bochicchio running alongside the Hibernia Bank and then enter a green Mustang, which was parked behind the bank.  After Bochicchio entered the vehicle, it sped away from behind the bank.  Rodriguez followed the green Mustang until he was able to obtain the license plate and obtain a clear view of the driver's face.  Eventually, Rodriguez idnetified the driver as Bochicchio's co-defendant, Conrad Fernandez.  Rodriguez was unable to get a clear view of the passenger's face. (PSR at ¶ 4; (D.E. 121, Trial Transcript, Volume 1 ("T. Tr. I") at 73-85).)

The day after the robbery, a green Mustang with Texas license plates YGR89M was located parked next to some condominiums in Padre Island, approximately two to three hundred yards from an adjacent Holiday Inn. Officer Richard Garcia testified at trial that the investigation determined that a "Conrad Fernandez" had rented a room at the Holiday Inn. He had rented the room and listed his current address on the hotel receipt, paying $410.97 in cash. He told the hotel employee who rented him the room that he would be staying for a couple of days and that he had "no car." (T. Tr. I at 97-101; 127-131.)

The General Manager of the hotel agreed to assist in locating Fernandez, and asked Kamela Gomez, a housekeeping employee, to inspect the room that Fernandez had rented. It was part of her duty to inspect rooms to make sure that they were cleaned properly. When she checked the room, Ms. Gomez observed a person in the room that she later identified as Bochicchio. (T. Tr. I at 149-53; 166-73.)

Evidence at trial also showed that Fernandez and another unknown individual went to the Jolly Pelican Restaurant located within the Holiday Inn. Witness Kerr Cobb was waiting on tables and recalled serving a chef salad to Fernandez, but she could not identify the second individual (who did not order any food) as Bochicchio. Apparently, Fernandez had only taken several bites of his salad when he abruptly got up and walked to the door when the other male came to the doorway. She inquired whether Fernandez's food was all right and he responded "yes," paid with a $50 bill and departed the restaurant. Several minutes later the police arrived at the restaurant and a picture of Fernandez was shown to the waitress, who identified him as the individual who was in the restaurant several minutes earlier. (T. Tr. I at 154-66.)

On August 3, 2005, approximately 12 days after the robbery, a search warrant was executed at the room Fernandez had rented at the Holiday Inn. Inside the hotel room, certain property had

been left behind, including two pants, several shirts, a bag, boots, a belt, two clothing bags and a briefcase. The briefcase found inside the room contained $1,172 in loose U.S. currency, and a wallet apparently belonging to Bochicchio, which contained a Texas driver's license, Social Security card and his birth certificate. (PSR at ¶ 11.) The police also observed a woman by the name of Mary Slusher attempting to gain entry into the hotel room at some point, although the record was unclear as to the date. She apparently had a key to the room but was not able to enter. (T. Tr. I at 105-06.)

Daniel Salinas had been Fernandez's neighbor for the past four or five years and testified that Bochicchio had been residing with Fernandez during the month of July 2005. He also testified that Mary Slusher was Bochicchio's girlfriend. (T. Tr. I at 146-49.)

Witness Janie Melendez testified that Bochicchio had applied for a job with her employer the week before the robbery. She phoned Bochicchio the morning of the robbery, but was unable to reach him. Later that day, he called her back, and she asked him to take a drug test. Bochicchio went and took a drug test at approximately 5 p.m. on the day of the robbery. The following day, he was offered a job, which he accepted. He was told to report to work the next Monday. Bochicchio never appeared for work and did not phone Ms. Melendez at any point to inform her or her employer he would not be coming to work. (T. Tr. I at 174-84.)

At the conclusion of the government's case, defense counsel moved for acquittal based on insufficiency of the evidence. In particular, counsel argued that the United States had failed to prove present sufficient evidence to identify Bochicchio as the bank robber. The Court denied the motion. (T. Tr. I at 185-86.)

The defense's first witness was Mary Slusher, Bochicchio's girlfriend. Ms. Slusher began testifying. (T. Tr. I at 193-95.) When she began to answer a question from defense counsel regarding problems between Bochicchio and his roommate/co-defendant, Fernandez, however,

AUSA Duke called for a bench conference. (T. Tr. I at 195.) During the conference, Mr. McGuire informed the Court that Ms. Slusher would testify that, when Fernandez was accused of burglarizing a friend's house, she and Bochicchio became concerned about his behavior as well as his drinking and therefore Bochicchio had decided to move out. The Court agreed with the AUSA that if that testimony came out, it would open the door to testimony or evidence about Bochicchio's prior convictions, including his prior convictions for bank robbery. (T. Tr. Vol. I at 195-197.) At that point, Mr. McGuire ended Ms. Slusher's testimony. The United States elicited testimony from her upon cross-examination concerning her prior convictions, and she was excused. (T. Tr. I at 198-99.)

The only other defense witness called was Ms. Slusher's son, Pablo Carlos Salinas, Jr. Mr. Salinas testified that, on the morning of the robbery, July 21, 2005, he was at his grandmother's house, which is approximately ten blocks from the bank that was robbed. Bochicchio had come to the house at some point between 8:30 and 9:00 looking for his mother, who was not home because she had left to attend a kick-boxing class. According to Salinas, he and Bochicchio had approximately a five-minute conversation at that time. Salinas testified that Bochicchio had come to talk with Ms. Slusher about his new job, and that Bochicchio was very excited and happy to have gotten a new job. Mr. Salinas also testified concerning his own past convictions, which included two state jail felonies for criminal trespass, two state jail felonies for possession of a controlled substance, two state jail felonies for theft, and a state jail felony for evading arrest and for aggravated robbery, although he testified that the charge was reduced to theft of a person. (T. Tr. I at 200-206.) The defense then rested. (T. Tr. I at 206.)

The jury returned a guilty verdict on March 7, 2007, and the Court ordered the United States Probation Office to prepare a Presentence Investigation Report. (D.E. 91, 92.) Bochicchio's counsel filed a motion for new trial, which was denied. (D.E. 95, 98.)

On May 25, 2006, the Court sentenced Bochicchio to 125 months in the custody of the Bureau of Prisons, to be followed by a three-year supervised release term. The Court also imposed a $200 fine, a $100 special assessment, and $3,879 in restitution. (D.E. 112, 115.) Judgment was entered on June 5, 2006. (D.E. 115.)

Bochicchio timely appealed. (D.E. 109.) On appeal, Bochicchio raised the following arguments:

> (1) that the district court erred in denying his motion to suppress an eyewitness's identification testimony on the ground that the identification derived from an impermissibly suggestive photographic line-up;
>
> (2) that the evidence was insufficient to support his conviction for bank robbery;
>
> (3) that the prosecutor made improper ex parte remarks; and
>
> (4) that the district court erred in ruling that proffered defense testimony would open the door to evidence regarding his prior criminal history.

In a per curiam opinion, the appellate court found none of these arguments persuasive and affirmed the judgment of this Court. United States v. Bochicchio, No. 06-40976 (5th Cir. May 29, 2007); see also D.E. 131. Bochicchio then filed a petition for writ of certiorari, which the Supreme Court denied on October 1, 2007. (D.E. 133.)

Bochicchio's motion pursuant to 28 U.S.C. § 2255 and supporting memorandum were filed on September 24, 2008. (D.E. 136, 137.) His motion is timely.

6

### III. MOVANT'S ALLEGATIONS

In his § 2255 motion, Bochicchio asserts two grounds for relief, both of which are ineffective assistance of counsel claims. First, he argues that his trial counsel was ineffective because he failed to move for acquittal on the grounds that the United States failed to present sufficient evidence that the robbed bank was insured by the FDIC on the day of the robbery. Second, he claims that he received ineffective assistance of counsel due to counsel's failure to advise Bochicchio that Slusher should continue to testify. Specifically, he contends that, once the Court admonished that her proffered testimony would open the door to evidence of Bochicchio's prior convictions, trial counsel should have changed his strategy, allowed the testimony and that Bochicchio would have then testified. He argues that the probative value of Slusher's testimony would have outweighed the prejudice that testimony concerning Bochicchio's prior convictions would have had.

As part of its response to Bochicchio's motion, the United States has provided the affidavit of Bochicchio's trial counsel, Patrick McGuire. In that affidavit, McGuire explains his reasons for advising Bochicchio to terminate early the testimony of Ms. Slusher:

> Mr. Bochicchio indicated he desired to have Mary Slusher testify in his behalf that he had moved from the home of his co-defendant Conrado [sic] Fernandez after learning that Fernandez had committed a burglary. He further desired to have her testimony about the circumstances surrounding the presence of Mr. Bochicchio's belongings in a hotel room provided by Fernandez.
>
> During Ms. Slusher's testimony, the trial judge announced outside the presence of the jury that if Petitioner presented evidence of why he had moved out of the co-defendant's home, she would allow evidence of Petitioner's prior Bank Robbery parole condition preventing him from associating with convicted felons. I explained the Court's ruling to both Ms. Slusher and Petitioner, and indicated I felt evidence of the prior conviction would be devastating. As Ms. Slusher continued her testimony before the jury, she appeared nonplussed. I explained to Mr. Bochicchio that I feared she would open the door to his prior conviction, and that the prejudicial effect of that evidence would outweigh any benefit gained from her

> testimony. I advised him to rest his case since I felt we had a viable jury argument that the Government had failed to adequately establish Mr. Bochicchio's identity as the robber. My impression was that Mr. Bochicchio understood and consented to the trial strategy.
>
> ... Mr. Bochicchio did not ask to testify after Ms. Slusher's testimony. Had he done so, I would have asked to make a record outside the presence of the jury that I advised him of the dangers of testifying and that he chose to do so despite those dangers.

(D.E. 140, Affidavit of Patrick J. McGuire at 1-2.) The Court grants the United States' motion to expand the record to include the affidavit of McGuire. As previously noted, the Court has also considered Bochicchio's reply.

For the reasons set forth herein, both of Bochicchio's claims are subject to dismissal.

## IV. DISCUSSION

**A.    28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).

**B.    Ineffective Assistance of Counsel Claims**

   **1.    General Standards**

Bochicchio's claims of ineffective assistance of counsel are properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis,

273 F.3d 592, 598 (5th Cir. 2001). To prevail on such a claim, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

### 2. Claim That Counsel Was Ineffective For Failing to Move for Acquittal On the Grounds that the United States Failed to Present Sufficient Evidence that the Robbed Bank was Insured by the FDIC on the Date of the Robbery

As noted, Bochicchio's first claim is that his trial counsel was constitutionally ineffective because he failed to argue for acquittal on the grounds that there was insufficient evidence that the robbed bank was insured by FDIC on the date of the robbery. The testimony establishing this element of the offense at trial came primarily from Alma DeLeon, whose title with the bank was "operational coordinator." Ms. DeLeon testified that her role was something similar to a manager of the bank.

Regarding the bank's FDIC insurance, she testified as follows on direct examination:

> Q. Is the Hibernia Bank a federally insured bank, a so-called FDIC bank?
> A. Yes.
> Q. And was it so on July the 21st of 2005?
> A. Yes, sir.

(T. Tr. I at 53.) Additionally, a teller, Ms. Gonzalez, testified that the bank was FDIC-insured,

although she did not specifically testify that it was insured on the date of the robbery. The United States also entered into evidence a picture of the bank that showed FDIC placards.

Bochicchio argues that the United States should have provided additional evidence in support of this element, such as the certificate of insurance itself. He cites to various cases in support of the claim that the United States did not present sufficient evidence to prove this element. (See D.E. 137 at 16, 18-20; D.E. 142 at 2-6.) He argues that counsel should have challenged the jury's verdict due to the alleged lack of proof.

While it is true that the United States *could have* presented additional evidence to support this element, it also appears under Fifth Circuit law that the evidence presented was sufficient. See United States v. Guerrero, 169 F.3d 933, 944-45 (5th Cir. 1999) (testimony of bank security officer that the bank was federally insured *at the time of trial*, even without testimony that the bank was insured *at the time of the robbery*, was sufficient evidence from which the jury could find the element, although the government was cautioned to prove this element "more properly"); United States v. Slovacek, 867 F.2d 842, 846 (5th Cir. 1989) (testimony of bank vice-president, unchallenged on cross-examination, that bank was FDIC-insured on the day of the robbery, was sufficient evidence of this element). Notably, moreover, the Fifth Circuit's opinion in this case specifies that the panel had reviewed the record and the briefs of the parties and specifically held that "the evidence presented at trial was sufficient for a reasonable jury to have found, beyond a reasonable doubt, that Bochicchio committed the instant offense." (D.E. 131 at 2 (citation omitted).) That ruling necessarily includes the finding that the government put on sufficient proof of the bank's insured status.

Because sufficient evidence of FDIC insurance was offered, even if counsel had moved for acquittal on the grounds that there was insufficient evidence on this element, that motion would have

10

been denied.  Thus, there was no prejudice to Bochicchio as a result of the failure.   United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").   For this reason, Bochicchio's first claim fails.

### 3.     Claim That Counsel Erred In Not Allowing Mary Slusher to Continue Testifying

Bochicchio couches his second claim as one that counsel was ineffective for "his failure to advise Petitioner that since the planned trial strategy had changed and since there was a possibility that a defense witness could establish that petitioner was in fact a convicted felon that petitioner could have allowed the witness to continue as the probative value of the testimony outweighed the possible prejudice."  (D.E. 136 at 6.)  Essentially, it is a claim that counsel erred in either advising Bochicchio to stop Slusher's testimony or in stopping the testimony.

The decision regarding whether to continue with Slusher's testimony ultimately was a strategic decision that was based on a determination of whether the value and helpfulness of her testimony would have outweighed the prejudice of the jury hearing testimony regarding Bochicchio's prior convictions.  Bochicchio now argues, after having received a guilty verdict from the jury, that Slusher's testimony would have been so helpful to his case that it would have outweighed evidence of his prior convictions.  He further avers that he then could have then testified and explained the "gaps" in the story for the jury, and also called additional defense witnesses.  He claims that Slusher would have testified that he had moved out of Fernandez's home because of concerns that Fernandez had committed another robbery and because of concerns over his drinking. He also claims that defense witnesses would have explained that, at the time of the robbery, he was returning a drum set that had been stolen by Fernandez to Mr. Castellanos (its rightful owner) and

11

thus it would have been impossible for him to commit the robbery.[2] Finally, Bochicchio claims that Slusher would have explained his presence in the hotel room by testifying that she had agreed to get a room at another hotel so that she and Bochicchio could have some privacy to celebrate his new job. Then, Fernandez had prepaid for a room for two days and was not going to use it further, so they apparently elected to use that room instead. (D.E. 137 at 21.) According to Bochicchio, she also would have testified that she went to the hotel room to retrieve his briefcase after he had left it there. He claims that the "most damaging piece of evidence" in the case was his personal belongings left at the hotel and suggests that the "credible" explanation for that evidence would have changed the outcome of the trial. (D.E. 137 at 22.)

Defense counsel has a markedly different view. In his affidavit, McGuire explains that, at the time of trial, he believed that evidence of Bochicchio's prior convictions would be "devastating" to his case. He further believed that, even without Ms. Slusher's testimony, there was the possibility of an acquittal because the eyewitness identifications were weak, in his view. (See D.E. 140, McGuire Aff. at 1.)

As set forth in the PSR, Bochicchio has a number of prior convictions that the jury would have likely heard about had Slusher's testimony continued and Bochicchio testified, as he now says counsel should have encouraged. These include a 1979 conviction for petit larceny, a 1982 conviction for robbery in which he robbed a bank utilizing a note which indicated that he had a gun, and a 1993 conviction in federal court for bank robbery and use of a firearm during a crime of violence, during which he and another individual robbed the Mercantile Bank in Corpus Christi,

---

[2] The trial transcript indicates that defense counsel was not certain Mr. Castellanos would provide an adequate alibi. He expressed that he thought the alibi would be "vague" and that he was unsure about how Castellanos would testify. (See T. Tr. I at 189-191.)

Texas using firearms and wearing stockings over their faces. Moreover, at the time of the instant offense, Bochicchio was still on supervised release for the 1993 bank robbery.

The evidence against Bochicchio included the testimony of two eyewitnesses, one who identified him as the robber at the bank, and another who placed him in the hotel room rented by Fernandez at some point after the robbery. While Slusher's testimony may have provided an explanation as to why Bochicchio and his property were in the hotel room, it still would not have invalidated the eyewitness testimony of the teller. It also would not have explained why Bochicchio, who had been unemployed for at least a month, was in possession of $1200 in small bills. Nor would her testimony have explained why he did not ever try to claim that money or his identification papers, other than sending her to the hotel to retrieve them. It also would not have explained why he did not show up for his new job, or call in to explain why he would not be starting the job. Moreover, pursuant to the Court's ruling, the jury then likely would have heard testimony regarding all of Bochicchio's prior convictions, including his most recent conviction for bank robbery.

The question before the Court is whether it was unreasonable of counsel to make the decision to discontinue Slusher's testimony and the alleged alibi defense. In analyzing this claim, the Court notes first that claims of uncalled witnesses are "disfavored." United States v. Harris, 408 F.3d 186, 190 (5th Cir. 2005) (citing Buckley v. Collins, 904 F.2d 263, 266 (5th Cir. 1996)). This is because "the presentation of testimonial evidence is a matter of trial strategy and because allegations as to what a witness would have testified to are largely speculative." Schwander v. Blackburn, 750 F.2d 494 (5th Cir. 1985) (citing Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978) and Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984)). Those concerns are certainly implicated here, particularly in light of the fact that no affidavit from Slusher has been offered.

13

Moreover, while Bochicchio claims that Slusher's testimony would have been largely favorable, he fails to take into account the risks that the jury would have found her story not credible or would dismiss her testimony entirely as biased. Additionally, she would have been subject to cross-examination and the United States may have been able to impeach her through other witnesses, as well.

After having carefully reviewed the trial record, the Court concludes that it was not unreasonable of counsel to conclude that Bochicchio's prior convictions would have been "devastating" to his case. The Fifth Circuit has repeatedly admonished that attorneys should not be subjected to unrealistic standards and that, when reviewing a § 2255 motion, "the acuity of hindsight is not our proper lens." United States v. Faubion, 19 F.3d 226 (5th Cir. 1994). Indeed, as the Fifth Circuit has recently reaffirmed:

> Judicial scrutiny of counsel's performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time." ... There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."

United States v. Harris, 408 F.3d 186, 189 (5th Cir. 2005) (citations omitted). In this case, that deference due counsel's performance precludes relief for Bochicchio, for he has done nothing to overcome the "strong presumption" that his counsel's performance on this issue was reasonable.

For all of these reasons, counsel's advice and decision not to permit Slusher to continue testifying in order to prevent Bochicchio's past convictions from being heard by the jury was not outside the broad range of what is considered reasonable assistance. See Dovalina, 262 F.3d at 474-75. Because he cannot establish deficiency, Bochicchio's second claim fails.

For the foregoing reasons, Bochicchio is not entitled to relief on either of his claims. The government's motion to dismiss is therefore GRANTED and Bochicchio's § 2255 motion is DENIED.

**C.     Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Bochicchio has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

The Court concludes that reasonable jurists could not debate the denial of Bochicchio's

§ 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Accordingly, Bochicchio is not entitled to a COA as to his claims.

## V.  CONCLUSION

For the above-stated reasons, the Court GRANTS the government's motion to dismiss (D.E. 141) and DENIES Bochicchio's § 2255 motion. (D.E. 136.)  The Court also DENIES Bochicchio a Certificate of Appealability.

ORDERED this 4th day of February, 2009.

_____
Janis Graham Jack
United States District Judge